Winfred STOKES, Appellant,

v.

William ARMONTROUT, Appellee.

No. 89–1103.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1989.

Decided Dec. 28, 1989.

Richard H. Sindel, Clayton, Mo., for appellant.

Stephen D. Hawke, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before McMILLIAN, ARNOLD, and BOWMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Winfred Stokes is under sentence of death in the Missouri State Penitentiary for the 1978 murder of Pamela Benda. He petitioned the District Court[1] for a writ of habeas corpus under 28 U.S.C. § 2254. This was his second petition, the first having been denied.[2] Stokes now alleged constitutional errors in the instructions guiding the jury during the sentencing phase of his trial. The District Court again denied relief, holding that the instructions passed constitutional muster. *Stokes v. Armontrout*, No. 88–1809C(6), slip op. (E.D.Mo. Jan. 13, 1989). The District Court also refused to grant Stokes a certificate of probable cause so that he could press an appeal of that Court's decision. Judge Gunn found that any appeal would be frivolous because the law governing Stokes's claims was "not susceptible to debate." *Stokes*, No. 88–1809C(6), slip op. at 5. Upon petitioner's motion, however, this Court issued such a certificate—limited to one issue: Stokes's challenge to the jury instructions under *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). *Mills* governs the jury's consideration of mitigating factors in the sentencing phase of a death-penalty case, and condemns an instruction that leaves a reasonable juror with the

---

1. The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri.

2. It is unnecessary for us to decide whether this petition is subject to dismissal for abuse of the writ. We express no view on that question.

impression that a mitigating circumstance may not be considered unless the jurors first unanimously find that it exists.

Because Stokes failed to raise his *Mills* claim before the Missouri state courts, and because the record reveals no justification for that failure, we hold that he is precluded from urging the point now. The District Court's judgment dismissing Stokes's petition is therefore affirmed. Stokes's procedural default bars him from raising his *Mills* claim in a federal habeas corpus proceeding. When the rehearing process in this Court has run its course, and if rehearing is denied, the stay of execution previously entered, *Stokes v. Armontrout*, No. 89–1103 (8th Cir. Jan. 23, 1989) (order), will be dissolved.

## I.

■ When a criminal defendant failed to raise a constitutional claim in the state courts, and because of a state procedural rule is now precluded from doing so, federal habeas corpus review of the merits of the claim is barred, subject to certain exceptions. *See, e.g., Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Here, Stokes does not allege that his *Mills* claim was ever presented to the Missouri courts, or that there is any available state procedure for raising it now. Rather he argues his claim under the novelty-cause and probable-innocence exceptions to the general procedural-bar rule. We shall address those arguments in due course.

We begin by describing the procedural history of this case in the state courts. In October 1979 Stokes was convicted of capital murder by a jury in the Circuit Court of St. Louis County. He was sentenced to death. At trial Stokes specifically objected to only one of the jury instructions: No. 5, regarding capital murder. He also made a general objection to the instructions as a whole. T. 295–96. In his motion for a new trial Stokes objected to two jury instructions. But neither of these instructions (No. 5, on capital murder, and No. 19, on the aggravating circumstance of profiting from the murder) deals with the procedure for considering mitigating circumstances.

Stokes appealed, alleging multiple constitutional errors in his trial. More particularly, he alleged: (1) that the State's late endorsement of witnesses, late notice of statutory aggravating circumstances, and pursuit of the death penalty after a broken plea bargain violated his right to due process; (2) that use of a death-qualified jury and application of a Missouri statute subjecting extenuating, mitigating, and aggravating evidence to the rules of evidence denied his Sixth Amendment right to a fair and impartial jury; and (3) that the Missouri statutory scheme for consideration and assessment of the death penalty violated the Eighth and Fourteenth Amendments. Stokes did not renew the jury-instruction challenges made in his new-trial motion. Instead, he challenged Instruction No. 21—the instruction underlying his current petition before this Court.[3] Stokes's challenge, however, was not a *Mills*-type objection. He did not question the impact a mistaken unanimity requirement might have had on the consideration of mitigating circumstances; he urged the instruction's ambiguity because it did not "adequately define statutory aggravating circumstanc-

---

**3.** Instruction No. 21 reads as follows:

 If you decide that a sufficient aggravating circumstance or circumstances exist to warrant the imposition of death, as submitted in Instruction No. 20, it will then become your duty to determine whether a sufficient mitigating circumstance or circumstances exist which outweigh such aggravating circumstance or circumstances so found to exist. In deciding that question you may consider all of the evidence relating to the murder of Pamela R. Benda.

 You may also consider whether the murder of Pamela R. Benda was committed while the defendant was under the influence of extreme mental or emotional disturbance.

 You may also consider any circumstances which you find from the evidence in extenuation or mitigation of punishment.

 If you unanimously decide that a sufficient mitigating circumstance or circumstances exist which outweigh the aggravating circumstance or circumstances found by you to exist, then you must return a verdict fixing defendant's punishment at imprisonment for life by the Division of Corrections without eligibility for probation or parole until he has served a minimum of fifty years of his sentence.

es [or] adequately explain mitigating circumstances." Appellant's Statement, Brief and Argument on Direct Appeal 9. The substance of Stokes's argument on this point is likewise bereft of any indication he had, or intended to raise, *Mills*-type concerns.[4]

The Missouri Supreme Court rejected each of Stokes's constitutional challenges to his trial and sentence. *State v. Stokes*, 638 S.W.2d 715 (1982) (en banc), *cert. denied*, 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983). The Court held that the petitioner had received due process, that his trial was fair, and that Missouri's statutory scheme for the death penalty satisfied constitutional standards. *Stokes*, 638 S.W.2d at 720–22, 724. Relying on three of its recent cases, the Court summarily rejected Stokes's vagueness attack on Instruction No. 21, along with all his general challenges to Missouri's "statutory scheme for consideration of and assessment of the death penalty...." *Stokes*, 638 S.W.2d at 724. Justice Seiler's dissent, joined by one other Justice, specifically reserved judgment on whether one of Missouri's statutory aggravating circumstances was unconstitutionally vague. He noted that Stokes had argued the point, though the Court implicitly declined to rule on it. *Id.* at 725–26. The dissent, however, like the Court's opinion, did not discuss at any length Stokes's vagueness challenge to Instruction No. 21's provisions about mitigating circumstances.

Following his unsuccessful direct appeal, Stokes collaterally challenged his conviction by filing a Rule 27.26 motion.[5] This provision of the Missouri Supreme Court

Rules was the substantial equivalent of a state habeas corpus proceeding.[6] The trial court denied his motion after an evidentiary hearing. Stokes again appealed. He contended that the Rule 27.26 trial court erred in three respects: in upholding his conviction and death sentence, even though he was forced to trial when his plea bargain collapsed because of ineffective assistance of counsel; in not finding a speedy-trial violation when he was arraigned one year and thirty-one days after his indictment was filed; and in not finding he was generally denied effective assistance of counsel. An important aspect of Stokes's ineffective-assistance claim was his lawyer's failure to offer a jury instruction on the lesser included offense of first-degree murder.

The Missouri Court of Appeals affirmed the Rule 27.26 trial court on each ground. *Stokes v. State*, 688 S.W.2d 19 (Mo.App. 1985). The Court held that Stokes's counsel was effective under the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), standard during plea negotiations and during the sentencing phase of his trial. *Stokes*, 688 S.W.2d at 22–24. The Court further held, applying the analysis of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), that the sixteen-month delay between indictment and trial did not deny Stokes's speedy trial right. *Stokes*, 688 S.W.2d at 23. The Court did not consider the instruction about mitigating circumstances. Stokes neither raised the instruction's constitutionality in his Rule 27.26 motion nor asserted it as a new ground of objection in his appeal.

---

**4.** Stokes also alleged several state law errors: the number of peremptory strikes allowed each side pursuant to a new statute, the admission of photographs of the victim's body into evidence, the exclusion of evidence that another person committed the crime, and the defectiveness of the indictment under which he was charged. The Missouri Supreme Court considered and rejected each of these contentions. *Stokes*, 638 S.W.2d at 722–23.

**5.** Stokes actually filed two Rule 27.26 motions. The initial motion dealt only with the constitutionality of the events surrounding the withdrawn plea-bargain. The state Circuit Court

denied Stokes's motion, and the Missouri Court of Appeals affirmed. *Stokes v. State*, 671 S.W.2d 822 (Mo.App.1984). In spite of the statutory presumption against second Rule 27.26 motions, the Missouri state courts nonetheless accepted such a motion from Stokes. It is this second, more comprehensive motion, dealing with Stokes's several constitutional claims (including ineffective assistance of counsel at trial, on direct appeal, and on state collateral attack), that is detailed above.

**6.** Rule 27.26 was repealed and replaced by Rule 29.15, effective January 1, 1988.

Stokes also moved the Missouri Supreme Court to recall its mandate in his direct appeal. Among numerous other points, he argued only one aspect of his jury instructions: the failure of either his trial counsel or the trial court to offer an instruction on the offense of felony murder. The Missouri Supreme Court denied his motion without an opinion. *State v. Stokes*, No. 61963 (Mo.Sup.Ct. Sept. 11, 1984) (order). After these Missouri court proceedings, Stokes petitioned the federal courts for habeas corpus relief. His first petition did not raise a *Mills*-type claim. Rather, Stokes renewed the severalty of arguments he made in his Rule 27.26 proceeding. This Court affirmed the District Court's denial of his petition on each asserted ground. *Stokes v. Armontrout*, 851 F.2d 1085 (8th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 823, 102 L.Ed.2d 812 (1989).

## II.

■ Stokes now claims that Instruction No. 21 violates the precepts of *Mills v. Maryland*, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). Instruction No. 21 is allegedly impermissible because it requires—or could be read by a reasonable juror to require—that jurors must unanimously find each particular mitigating circumstance before weighing that circumstance in the sentencing balance. We are precluded from reaching the merits of Stokes's claim. True to his admission, our study of the five state-court proceedings reviewing his conviction reveals that Stokes's *Mills*-type instruction claim was not raised at any time in the state courts. State procedural law would now bar Stokes from raising this issue in the state courts, and this bar would unquestionably be an adequate and independent state ground barring direct review by the Supreme Court of the United States. We hold that federal habeas review of this claim is also barred.

Stokes can overcome Missouri's procedural bar in either of two ways: by showing "cause" sufficient to excuse his default and "prejudice" resulting from that default, *Wainwright v. Sykes*, 433 U.S. 72, 97

S.Ct. 2497, 53 L.Ed.2d 594 (1977), or (irrespective of cause and prejudice), by showing that the error complained of resulted in his death penalty despite his probable "innocence," *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The petitioner urges that his default should be excused under both rationales. First, Stokes asserts that the Supreme Court's enunciation in *Mills* of a novel constitutional principle governing jury instructions satisfies the cause requirement. And second, Stokes asserts that he is "innocent" of the death penalty, and that the jury would probably have given him a life sentence if it had been correctly instructed. We consider his claims in turn.

In *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the Supreme Court held that a recently announced and path-breaking rule of law—involving "a constitutional claim ... so novel that its legal basis [was] not reasonably available to counsel"—satisfies *Wainwright*'s "cause" requirement. *Reed*, 468 U.S. at 16, 104 S.Ct. at 2910; *see also Dugger v. Adams*, — U.S. —, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989) (discussing but not finding novelty cause in an Eighth Amendment challenge to a jury instruction on grounds approved in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). Stokes claims that *Mills* was novel, that the case first established a new rule—the impermissibility of instructions that could be read to require unanimity for the consideration of relevant, mitigating evidence. In a recently decided case, *Smith v. Armontrout*, 888 F.2d 530 (8th Cir.1989), we rejected that argument.

> If it be suggested that the point is a novel one ... the *Mills* opinion itself stands as refutation. The case is written as a standard application of the rule that juries must be free to consider any and all evidence as a mitigating factor. This has been a familiar feature of the legal landscape since 1978, when *Lockett v. Ohio*, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] was decided.

*Smith*, at 545. *Smith* governs Stokes's petition. "The tools with which to make a *Mills* argument were available in [1979],

**156**

when this case was tried." *Ibid.* Stokes's failure to make a *Mills*-type argument before the Missouri courts bars our consideration of the claim now.

Stokes also invokes *Murray's* "innocence" or "miscarriage of justice" exception to Missouri's procedural bar. Here Stokes's claim is not innocence of the crime but rather "innocence" of the penalty. We have made it clear that *Murray's* innocence exception applies by analogy in such situations. "In the penalty-phase context, this exception will be available if the federal constitutional error alleged probably resulted in a verdict of death against one whom the jury would otherwise have sentenced to life imprisonment." *Smith,* at 545.

■ But as was the case with his novelty-cause claim, Stokes's effort to bring himself within the innocence exception fails. "The question is this: if the jury had been told, in compliance with *Mills,* that any mitigating circumstance, even if not unanimously found by the jury, could be weighed, would it probably have fixed the punishment at life in prison?" *Ibid.* This record can give only one answer—no. Stokes's counsel chose not to offer any mitigating evidence during either the guilt phase or the penalty phase of the trial. (The former decision was clearly in line with Stokes's complete-innocence defense.) After reviewing the whole trial transcript, we conclude that the jury had only one mitigating circumstance to weigh against Stokes's brutal acts: a court-initiated instruction about Stokes's possibly disturbed mental or emotional state. *See* Instruction No. 21; Mo.Rev.St. § 565.012.3. In our judgment, the death penalty would have been assessed "even if the jury had been instructed in the terms petitioner now claims are required by *Mills.*" *Smith,* at 546.

### III.

We have carefully considered Stokes's several state-court proceedings to make certain his *Mills* claim was never pressed in the state courts. We have also examined the suggested exceptions to the procedural bar Missouri asserts against his claim. But to no avail; Stokes's constitutional claim is beyond our reach. The judgment of the District Court, dismissing Stokes's habeas petition, is affirmed on the ground of procedural default. The stay of execution will remain in effect for the time being. If, however, no timely petition for rehearing is filed, or if one is filed and denied, we will dissolve the stay and issue our mandate.

It is so ordered.