**John Edward SWINDLER, Petitioner,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Corrections, Respondent.**

**No. PB–C–81–415.**

United States District Court,
E.D. Arkansas,
Pine Bluff Division.

June 13, 1990.

Thurman Ragar, Jr., Van Buren, Ark. and Gerald A. Coleman, West Memphis, Ark., for petitioner.

Jack Gillean, Asst. Atty. Gen., State of Ark., Little Rock, Ark., for respondent.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

Petitioner Swindler shot and killed Officer Randy Basnett of the Fort Smith, Arkansas police department on September 2, 1976. At the time, Swindler, a federal parolee, was wanted for the murder of a teenaged couple in South Carolina, a crime for which he was subsequently convicted. Swindler's guilt is not open to question. Two eyewitnesses saw him gun down the officer, who did not pull his gun until after he was shot. Swindler was apprehended immediately after the occurrence. His vehicle contained four guns, a rifle scope and over 200 rounds of ammunition. *Swindler v. State*, 267 Ark. 418, 592 S.W.2d 91, 93 (1979).

Swindler's first conviction and death sentence were reversed by the Supreme Court of Arkansas, principally because the trial judge had refused a change of venue from Sebastian County where the crime occurred. *Swindler v. State*, 264 Ark. 107, 569 S.W.2d 120 (1978). After venue was changed to Scott County, Swindler was again convicted and again sentenced to death. His conviction and death sentence were affirmed unanimously by the Supreme Court of Arkansas. *Swindler v. State*, 267 Ark. 418, 592 S.W.2d 91 (1979). The United States Supreme Court denied certiorari. *Swindler v. Arkansas*, 449 U.S. 1057, 101 S.Ct. 630, 66 L.Ed.2d 511 (1980). Swindler then filed for post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. His petition was denied. *Swindler v. State*, 272 Ark. 340, 617 S.W.2d 1 (1981). Certiorari was again denied by the United States Supreme Court. *Swindler v. Arkansas*, 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240 (1981).

Having exhausted his post-conviction remedies in the Supreme Court of Arkansas, petitioner sought relief in a federal *habeas corpus* petition brought under 28 U.S.C. §§ 2242 and 2254. Nine grounds were asserted in the petition, but only seven were maintained in the habeas hearing. Subsequent to the hearing, petitioner abandoned his claim that "death qualifying" the jury violated his sixth amendment rights in view of the holding in *Lockhart v. McCree*, 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). *See Swindler v. Lockhart*, 693 F.Supp. 760, 762 n. 1 (E.D. Ark.1988). The six remaining grounds in the petition were found to be without merit, and the petition was denied. *Id.* at 770. The Court of Appeals affirmed; rehearing and rehearing *en banc* were denied. *Swindler v. Lockhart*, 885 F.2d 1342 (8th Cir.1989). However, the Court of Appeals stayed the issuance of its mandate pending application for a writ of certiorari to the Supreme Court of the United States. Swindler's petition for certiorari was denied by the Supreme Court on April 23, 1990. *Swindler v. Lockhart*, —— U.S. ——, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990).

On May 18, 1990, the mandate of the Court of Appeals affirming the denial of habeas by the district court was received and filed by the U.S. District Clerk for the Eastern District of Arkansas. On the same date the Attorney General of the State of Arkansas petitioned for dissolution of the stay of execution issued by this court on December 14, 1981. By order dated May 23, 1990, the stay of execution was dissolved. The Governor of Arkansas has now set petitioner's execution for June 18, 1990.

Swindler has now filed a second habeas petition. Such petitions are governed by Rule 9(b), promulgated by the United States Supreme Court, governing 28 U.S.C. § 2254 proceedings in the United States District Courts. Rule 9(b) reads as follows:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that

the failure to the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

There have been three recent definitive opinions of the U.S. Court of Appeals for the Eighth Circuit on the subject of successive habeas petitions. All opinions were written by Judge Richard Arnold, and all petitioners were under a death sentence.

In *Fairchild v. Lockhart*, 900 F.2d 1292 (1990) the Court of Appeals held that the district judge abused his discretion in entertaining Fairchild's second petition. In his second habeas petition, Fairchild made a due process claim which, as Judge Arnold noted, could have been raised in the Arkansas courts, but is now procedurally barred in the state courts. Fairchild was likewise barred from urging the due process point in his federal habeas petition since he was unable to show "cause" for his procedural default in the state courts and "prejudice" resulting from that default. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). "There are excellent reasons for the rule that claims not properly preserved in the state courts are normally not open on habeas. The trial in state court should be the main judicial event." *Fairchild v. Lockhart, supra* at 1294.

The Court of Appeals also held that "it is, with some exceptions, an abuse of the Great Writ to assert new grounds for relief that were available at the time of an initial petition." *Id., citing Woodard v. Hutchins*, 464 U.S. 377, 380, 104 S.Ct. 752, 753, 78 L.Ed.2d 541 (1984) (per curiam) (Powell, J. concurring joined by a majority of the court) and *Smith v. Armontrout*, 888 F.2d 530, 540 (8th Cir.1989). Fairchild abused the writ because his new claim and the evidence to support it were previously available and because none of the recognized exceptions applied.

*Smith v. Armontrout*, contains a cogent analysis of the limitations on successive habeas petitions. Judge Arnold summarized the governing principles: "An attempt to raise claims omitted from a previous petition should be rejected as an abuse of the writ if (1) the previous omission was

the deliberate choice of the petitioner *or* (2) the previous omission is not excusable under the cause-prejudice-innocence approach of *Wainwright* and *Murray v. Carrier,* 477 U.S. 478 [106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) ]." *Smith,* 888 F.2d at 541. The *Carrier* court held that "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in .the absence of a showing of cause for the procedural default." *Id.* at 496, 106 S.Ct. 2639. Here there is no contention that Swindler did not kill Officer Basnett.

The Court of Appeals affirmed the refusal of the district court to entertain a second habeas petition in *Wilson v. Lockhart,* 892 F.2d 754 (8th Cir.1990), *citing Sanders v. United States,* 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) (controlling weight *may* be given to a prior determination on merits when "ends of justice would not be served" by redetermination) and *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality) (court *required* to entertain successive petition only when petition supplements claim with "colorable showing of factual innocence"). Although *Kuhlmann v. Wilson, supra,* was a plurality opinion in the United States Supreme Court, it has been cited with approval and applied by the Court of Appeals in *Williams v. Armontrout,* 855 F.2d 578 (8th Cir.1988).

In order to demonstrate that the ends of justice mandate another hearing, the prisoner must make a "colorable showing of factual innocence." *Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986) (plurality). Williams does not attempt to meet this burden. Williams has neither shown nor alleged unfairness at any step of his collateral review, and we find that the district court did not abuse its discretion in dismissing the petition.

*Id.* at 580.

In his second petition for habeas relief, the only ground raised by Swindler is that the trial court gave an erroneous instruction on mitigation, as follows:

The jury will make each of the following findings by having its foreman place a check mark ( ) in the appropriate space in the sentence in accordance with the jury's response. These findings must be unanimously made. Each member of the jury will then sign the bottom of this form.

(Trial Transcript at 2206). Admittedly, petitioner has never previously attacked this instruction in state or federal court.

Swindler contends that this instruction is contrary to the Supreme Court's decision in *Mills v. Maryland,* 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988). This case, however, is not applicable. *Mills* was a direct appeal to the Supreme Court from the Maryland Court of Appeals, not a successive habeas petition in federal court. *Stokes v. Armontrout,* 893 F.2d 152 (8th Cir.1989), also written by Judge Richard Arnold, is directly in point. Stokes was under sentence of death for murder. The sole issue in the second habeas petition was framed as follows by the Court of Appeals: "Stokes's challenge to the jury instructions under *Mills v. Maryland,* 486 U.S. 367 [108 S.Ct. 1860, 100 L.Ed.2d 384] (1988)." The Court of Appeals held with regard to this single issue:

*Mills* governs the jury's consideration of mitigating factors in the sentencing phase of a death-penalty case, and condemns an instruction that leaves a reasonable juror with the impression that a mitigating circumstance may not be considered unless the jurors first unanimously find that it exists.

Because Stokes failed to raise his *Mills* claim before the Missouri state courts, and because the record reveals no justification for that failure, we hold that he is precluded from urging the point now. The District Court's judgment dismissing Stokes's petition is therefore affirmed....

When a criminal defendant failed to raise a constitutional claim in the state courts, and because of a state procedural rule is now precluded from doing so, federal

habeas corpus review of the merits of the claim is barred, subject to certain exceptions. *See, e.g., Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

*Stokes,* 893 F.2d at 152–53.

In the case at bar, just as in *Stokes,* petitioner does not allege that the *Mills* claim was ever presented to the Arkansas courts. His contention is identical to the claim made in *Stokes* ... "Rather he argues his claim under the novelty cause...." *Id.* at 153.

The Court of Appeals at 155 held that Stokes could overcome Missouri's procedural bar by showing "cause" sufficient to excuse his default and "prejudice" from that default. *Wainwright,* 433 U.S. 72, 97 S.Ct. 2497. This assertion is just as applicable to Swindler as it is to Stokes. Like Swindler, Stokes tried to find "cause" in the Supreme Court's enunciation of a novel constitutional principle governing jury instructions.

Stokes claims that *Mills* was novel, that the case first established a new rule—the impermissibility of instructions that could be read to require unanimity for the consideration of relevant, mitigating evidence. In a recently decided case, *Smith v. Armontrout,* 888 F.2d 530 (8th Cir.1989), we rejected that argument.

If it be suggested that the point is a novel one ... the *Mills* opinion itself stands as refutation. The case is written as a standard application of the rule that juries must be free to consider any and all evidence as a mitigating factor. This has been a familiar feature of the legal landscape since 1978, when *Lockett v. Ohio,* 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)] was decided.

*Smith,* at 545. *Smith* governs Stokes's petition. "The tools with which to make a *Mills* argument were available in [1979], when this case was tried." *Ibid.* Stokes's failure to make a *Mills*-type argument before the Missouri courts bars our consideration of the claim now.

*Stokes v. Armontrout, supra* at 155–56.

This language is particularly applicable to the case at bar. *Lockett v. Ohio, supra,* was decided July 3, 1978. Swindler's trial began October 16, 1978. Thus, the trial and all subsequent appellate procedures occurred after the *Lockett* decision.

The Court of Appeals did not find it necessary to consider whether Stokes had abused the writ. *See Stokes v. Armontrout,* 893 F.2d 152, n. 2. However, Stokes filed another habeas petition after the affirmance noted above, along with an application for a stay. The district court and the Court of Appeals granted the stay to consider the additional *habeas.* The State of Missouri petitioned the Supreme Court to vacate the stay. The motion was granted.

A stay of execution pending disposition of a second or successive federal habeas petition should be granted only when there are "substantial grounds upon which relief might be granted." *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 3396, 77 L.Ed.2d 1090 (1983). There are no "substantial grounds" present in this case, because respondent's fourth federal habeas petition clearly constitutes an abuse of the writ. See 28 U.S.C. § 2254 Rule 9(b); *id.,* § 2244(b)....

The fourth federal habeas petition now pending in the District Court "is another example of abuse of the writ." *Woodard v. Hutchins,* 464 U.S. 377, 378–380, 104 S.Ct. 752, 752–53, 78 L.Ed.2d 541 (1984).... The District Court abused its discretion in granting a stay of execution. The motion to vacate the stay is granted.

*Sub nom Delo v. Stokes,* —— U.S. ——, 110 S.Ct. 1880, 1881, 109 L.Ed.2d 325 (1990) (Justices Blackmun, Marshall, Brennan and Stevens dissenting).

Here there is clearly an abuse of the writ, as the State contended in its response. The *Wainwright* test must also be applied to the second habeas petition in the same manner as in a state procedural bar. The Court of Appeals in *Stokes,* as pointed out *supra,* did not deal with abuse of the writ, but Judge Arnold thoroughly discussed the issue in *Fairchild v. Lockhart, supra,* and

*Smith v. Armontrout, supra.* The only "cause" advanced to justify omission of the *Mills* argument from the first habeas is the alleged novelty of the decision of the Supreme Court in *Mills v. Maryland, supra.* This argument has been expressly rejected by the Court of Appeals.

It is not necessary to reach "prejudice" since "cause" has not been established, but I also find that Swindler has failed to demonstrate "prejudice" to excuse his default in the state proceedings and in the first federal habeas petition. I do not see how the death penalty was affected by the Court's instructions. The instructions on "aggravating" and "mitigating" circumstances appear on page 2204–2208 of the transcript. They are attached hereto as Exhibit A. I fail to see how Swindler was prejudiced by the instruction and findings on "mitigating" circumstances. While there is a requirement that the findings be unanimous as to mitigating circumstances, it seems clear from the jury verdict that the jury found no mitigating circumstances. On each of the grounds for mitigation, the jury found unanimously and specifically that "mitigating" circumstances did not exist. In addition the jury found that no other mitigating circumstances were present beyond those specifically enumerated. While the instruction did not require that "mitigating" circumstances be found beyond a reasonable doubt, petitioner argues that because such a standard is applied for "aggravating" circumstances, it could be interpreted by the jury as the standard for "mitigating" circumstances. The standard in the instruction was the same for finding "mitigating" circumstances or the absence of "mitigating" circumstances. If the jury so interpreted the instructions, it unanimously found an absence of "mitigating" circumstances beyond a reasonable doubt.

The instructions in *Mills v. Maryland, supra,* the case on which Swindler pins his argument, are entirely different from those involved herein. The verdict forms in *Mills* are set forth in an appendix to the opinion. The "mitigating" factors were set out and an adjacent space is to be marked "yes" or "no" by the jury. The crux of the majority opinion appears in the following sentences from this 5–4 decision:

> If the jury understood the verdict form as the Court of Appeals asserted it should have, then every time it marked "no" beside a mitigating circumstance it indicated its unanimous conclusion that petitioner had not proved the relevant facts by a preponderance of the evidence, and thus the court properly upheld the judgment. On the other hand, if the jury understood that it should mark "no" when it failed to agree unanimously that a mitigating circumstance existed, then some jurors were prevented from considering "factors which may call for a less severe penalty," *Lockett v. Ohio,* 438 U.S., at 605 [98 S.Ct., at 2965] and petitioner's sentence cannot stand.

486 U.S. at 376, 108 S.Ct. at 1866.

It was this ambiguity that led the Supreme Court to reverse in *Mills.* No such ambiguity exists in the way the verdict forms are framed in *Swindler.*

Petitioner cites *McKoy v. North Carolina,* —— U.S. ——, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990). Like *Mills v. Maryland, supra,* this case was decided on direct appeal from the Supreme Court of North Carolina. It has no application in a successive habeas petition where there has been a procedural default in state court and in the first habeas petition. Just as in *Mills,* there are significant differences in the instructions given in *McKoy* and those in *Swindler.* The instructions at issue in *Penry v. Lynaugh,* —— U.S. ——, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) cited by petitioner bear little resemblance factually to those given herein. Furthermore, there were objections to the instructions in the trial court and their infirmity was raised not in a successive petition but in the initial habeas petition. This case is in nowise applicable to the case at bar.

There is a more valid reason why Swindler suffered no prejudice as a result of the instruction on mitigation. The trial record in this case contains no substantial evidence of mitigating circumstances. The only defense witness on the guilt phase of

the case was Swindler himself. With the exception of a brief recitation about falling from a bridge and hitting his head (TR 1991) and having only a seventh grade education (TR 1993), Swindler's only testimony concerned the shooting incident. His version, contradicted by the eyewitness, was that the police officer shot him before his own weapon was fired. Swindler presented no mitigating evidence in the penalty phase of the trial. His defense in the penalty phase consisted of the following statement by his attorney: "Your honor, the defendant offers into evidence the testimony at the prior trial at [sic] the guilt or innocence phase of the trial to be considered by the jury in deciding the penalty." (TR 2195). The testimony in the guilt or innocence phase of the trial demonstrated a wanton and premeditated killing of the officer with no substantial mitigating or extenuating circumstances.

Little needs to be said about the "miscarriage of justice" argument in Swindler's petition and brief. The answer to this argument given by Judge Arnold in *Stokes* should suffice. He quoted as follows from *Smith v. Armontrout, supra* at 545:

> The question is this: If the jury had been told, in compliance with *Mills*, that any mitigating circumstances, even if not unanimously found by the jury, could be weighed, would it probably have fixed the punishment at life in prison.... In our judgment, the death penalty would have been assessed "even if the jury had been instructed in the terms petitioner now claims are required by *Mills*." *Smith*, at 545–46.

The facts in *Swindler* compel the same conclusion.

## CONCLUSION

This case has been to the United States Supreme Court three times, the Supreme Court of Arkansas three times, the Court of Appeals once and twice before the district court. It will probably again go the Court of Appeals and the Supreme Court. Petitioner has been found guilty by two juries and unanimously sentenced to death. He deliberately and in cold blood took the life of a young police officer while fleeing from a double murder he had committed in South Carolina.

The second habeas petition filed by Swindler is without merit. With regard to the state procedural default, his petition comes squarely within the ruling of the Court of Appeals in *Stokes v. Armontrout, supra.* *Stokes* is factually and legally indistinguishable from the case at bar. The Court of Appeals did not, however, address the abuse of the writ, which the State has raised.

In further proceedings before the Supreme Court in *Stokes*, this matter was addressed. Holding that Stokes had also abused the writ, that court ordered his execution on May 11, 1990. *Delo v. Stokes, supra.* Abuse of the writ is also thoroughly discussed in two recent Eighth Circuit cases—*Fairchild v. Lockhart, supra,* and *Smith v. Armontrout, supra.* These cases control this facet of Swindler's petition.

This court does not see how failure to grant the writ constitutes a miscarriage of justice, as petitioner argues. I have searched this record for evidence which would have justified a finding of "mitigating" circumstances in this brutal killing of a police officer. Like the jury, I am unable to find such mitigation.

The second petition for *habeas corpus* is denied and dismissed. The application for a stay of Swindler's execution is denied.

IT IS SO ORDERED.

## EXHIBIT A

### FORM A

AGGRAVATING CIRCUMSTANCES

STATE OF ARKANSAS VS JOHN EDWARD SWINDLER

The jury will make each of the following findings by having its foreman place a check mark ( ) in the appropriate space in the sentence in accordance with the jury's response. These findings must be unanimously made. Each member of the jury will then sign the bottom of this form.

WE OF THE JURY FIND THAT:

(A) (X) The Defendant, John Edward Swindler, previously· committed, beyond a reasonable doubt, another felony an element of which was the use or threat of violence to another person or creating a sub-stantial risk of death or serious physical injury to another person.

( ) The Defendant, John Edward Swindler, did not previously commit another felony an element of which was the use or threat of violence to another person or creating a substantial risk of death or serious physical injury to another person.

(B) (X) The Defendant, John Edward Swindler, in the commis-sion of the capital murder, beyond a reasonable doubt, knowingly created a great risk of death to a person other than the victim.

2204

Page Two

( ) The Defendant, John Edward Swindler, in the commission of the capital murder did not knowingly create a great risk of death to a person other than the victim.

(D) (X) The capital murder, beyond a reasonable doubt, was committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody.

( ) The capital murder was not committed for the purpose of avoiding or preventing an arrest or effecting an escape from custody.

WE THE JURY THEREFORE FIND THAT AS TO DEFENDANT, JOHN EDWARD SWINDLER:

(X) ONE OR MORE AGGRAVATING CIRCUMSTANCE EXISTED, BEYOND A REASONABLE DOUBT, AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

( ) ONE OR MORE AGGRAVATING CIRCUMSTANCE DID NOT EXIST AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

SIGNATURE OF JURY:

_Archibald Knight_ FOREMAN _Henry Y. Sorverman_

_Freeman Jones_ _Bobby G. Hunt_

_John Showalter_ _Walter Holloway_

_Susie Fisher_ _J.J. Carey_

_____ _Bill Stagg_

_____ _Knox I. Price_

FORM 'B

MITIGATING CIRCUMSTANCES

STATE OF ARKANSAS VS JOHN EDWARD SWINDLER

 The jury will make each of the following findings by having its foreman place a check mark ( ) in the appropriate space in the sentence in accordance with the jury's response. These findings must be unanimously made. Each member of the jury will then sign the bottom of this form.

WE THE JURY FIND THAT:

(A) ( ) The capital murder was committed while the Defendant was under extreme mental or emotional disturbance.

 (X) The capital murder was not committed while the Defendant was under extreme mental or emotional disturbance.

(B) ( ) The capital murder was committed while the Defendant was acting under unusual pressures or influences or under the domination of another person.

 (X) The capital murder was not committed while the Defendant was acting under unusual pressures or influences or under the domination of another person.

(C) ( ) The capital murder was committed while the capacity of the Defendant to appreciate the wrongfulness of his conduct or to comform his conduct to the requirements of law was impaired

1332

as a result of mental disease or defect, intoxi-
cation, or drug abuse.

(X) The capital murder was not committed while the
capacity of the Defendant to appreciate the
wrongfulness of his conduct or to comform his con-
duct to the requirements of law was impaired as
a result of mental disease or defect, intoxi-
cation, or drug abuse.

(E) ( ) Additional mitigating circumstances not mentioned
above exists.

(X) Additional mitigating circumstances not mentioned
above do not exist.
(If such other circumstances are found to exist,
please indicate them on the reverse side of this
form).

WE OF THE JURY THEREFORE FIND AS TO DEFENDANT JOHN EDWARD
SWINDLER:

( ) ONE OR MORE MITIGATING CIRCUMSTANCES EXISTED.

(X) ONE OR MORE MITIGATING CIRCUMSTANCES DOES NOT EXIST.

SIGNATURES OF JURY:

_____ FOREMAN _____

_____ _____

_____ _____

_____ _____

_____ _____

## CONCLUSIONS AND VERDICT

### STATE OF ARKANSAS VS JOHN EDWARD SWINDLER

THE JURY, HAVING REACHED ITS FINAL CONCLUSIONS, WILL SO INDICATE BY HAVING ITS FOREMAN PLACE A CHECK MARK (X) IN THE APPROPRIATE SPACE IN THE SENTENCE IN ACCORDANCE WITH THE JURY'S RESPONSE. THESE CONCLUSIONS MUST BE UNANIMOUSLY REACHED. EACH MEMBER OF THE JURY WILL THEN SIGN THE BOTTOM OF THIS FORM.

I

(A) (λ) ONE OR MORE AGGRAVIATING CIRCUMSTANCES(S) EXISTED BEYOND A REASONABLE DOUBT AT THE TIME OF THE COMMISSION OF THE CAPITAL MURDER.

(B) ( ) ONE OR MORE MITIGATING CIRCUMSTANCE(S) DOES EXIST.

II

(A) (X) THE AGGRAVATING CIRCUMSTANCE(S) OUTWEIGH, BEYOND A REASONABLE DOUBT, ANY MITIGATING CIRCUMSTANCES.

(B) ( ) THE AGGRAVATING CIRCUMSTANCE(S) DO NOT OUTWEIGH, BEYOND A REASONABLE DOUBT, ANY MITIGATING CIRCUMSTANCE(S).

III

(A) ( ) THE AGGRAVATING CIRCUMSTANCE(S) ARE NOT SUFFICIENT TO JUSTIFY THE IMPOSITION OF THE SENTENCE OF DEATH AND WE SENTENCE THE DEFENDANT, JOHN EDWARD SWINDLER, TO LIFE WITHOUT PAROLE.

(B) (X) THE AGGRAVATING CIRCUMSTANCES ARE SUFFICIENT TO JUSTIFY, BEYOND A REASONABLE DOUBT, THE IMPOSITION OF THE SENTENCE OF DEATH, AND WE SO SENTENCE THE DEFENDANT, JOHN EDWARD SWINDLER.

SIGNATURES OF JURORS:

_____ FOREMAN _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____